MANDATE
18-2450-cv
*South Carolina Retirement Systems et al v. Eaton Corporation PLC, et al*

N.Y.S.D. Case #
16-cv-5894(JGK)

Case 1:16-cv-05894-JGK   Document 110   Filed 11/27/19   Page 1 of 5

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of November, two thousand nineteen.

PRESENT:   JOSÉ A. CABRANES,
           REENA RAGGI,
                    *Circuit Judges,*
           EDWARD R. KORMAN,
                    *District Judge*[*]

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Nov 27 2019

---

SOUTH CAROLINA RETIREMENT SYSTEMS GROUP TRUST,

       *Plaintiff-Appellant,*                                18-2450-cv

STEAMFITTERS LOCAL 449 PENSION PLAN, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,
HELENE GABRIELE, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

       *Plaintiffs,*

       v.

EATON CORPORATION PLC, ALEXANDER CUTLER,
RICHARD FEARON,

---

[*] Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

1

MANDATE ISSUED ON 11/27/2019

*Defendants-Appellees.*

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | THOMAS A. DUBBS, Louis Gottlieb, Jeffrey A. Dubbin, Labaton Sucharow LLP, New York, NY. |
| **FOR DEFENDANTS-APPELLEES:** | JAMES E. BRANDT, Jeff G. Hammel, Latham & Watkins LLP, New York, NY; Roman Martinez, Benjamin W. Snyder, Latham & Watkins LLP, Washington, D.C. |

Appeal from a July 26, 2018 judgment of the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED.**

Plaintiff-Appellant South Carolina Retirement Systems Group Trust, lead plaintiff in a putative securities class action, challenges the District Court's dismissal of its second amended complaint (the "complaint") against Eaton Corporation ("Eaton") and two of its executives, Alexander M. Cutler ("Cutler") and Richard H. Fearon ("Fearon"). Plaintiff argues that its complaint adequately states a claim for relief under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review the grant of a motion to dismiss de novo, accepting as true all factual claims and reasonable inferences in the plaintiff's favor. To avoid dismissal under Section 10(b) and Rule 10b-5, a complaint must plausibly allege: (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . . ; (5) economic loss; and (6) loss causation." *Singh v. Cigna Corporation*, 918 F.3d 57, 62 (2d Cir. 2019) (internal citations and quotation marks omitted). If any element of such a claim is not plausibly alleged, the complaint will be dismissed.

Plaintiff argues that its complaint plausibly alleged that defendants intentionally misrepresented and omitted material information about Eaton's vehicle business. Specifically, Plaintiff argues that defendants misled investors about the possibility that Eaton could divest its vehicle business after its merger with Cooper Industries plc ("Cooper"). The District Court disagreed and dismissed the complaint. We now conclude that the District Court was correct to dismiss, reaching only the issue of whether there were any material misrepresentations or omissions. We find there were none, and affirm the dismissal of the complaint on that ground alone.

2

Our precedent holds that "an alleged misrepresentation is material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares of stock. Such a statement must, in the view of a reasonable investor, have significantly altered the total mix of information made available. The statement must also be mislead[ing], evaluated not only by literal truth but by context and manner of presentation." *Singh*, 918 F.3d at 63 (internal citations and quotation marks omitted).

Regarding omissions, "we have consistently held that an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts. Such a duty may arise when there is a corporate insider trad[ing] on confidential information, a statute or regulation requiring disclosure, or a corporate statement that would otherwise be inaccurate, incomplete, or misleading." *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015) (internal citations and quotation marks omitted). A company has no duty to disclose information "merely because a reasonable investor would very much like to know" that information. *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993); *see Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44–45 (2011) ("[Section] 10(b) and Rule 10b–5(b) do not create an affirmative duty to disclose any and all material information." (internal citations and quotation marks omitted)).

Plaintiff alleges ten misrepresentations or omissions in its complaint. We consider each in turn and conclude that no material misrepresentation or omission occurred.

*May 21, 2012 Conference Call Statement 1:* Plaintiff argues that Cutler misleadingly answered a question about Eaton's "portfolio evolution over time" in failing to state that Eaton would be subject to a tax burden if it divested from its vehicle business within five years of the merger. JA 376. But, in fact, Cutler's purported omission of tax consequences was not a misleading material omission because he clearly said that "[w]e have continued and will continue to grow our two vehicle businesses" and that any change is "not in our active planning." JA 376. Considering Cutler's response in full—rather than considering the edited version that plaintiff provides in its brief—no misrepresentation or omission occurred.

*May 21, 2012 Conference Call Statement 2*: Plaintiff argues that Cutler misleadingly answered a question about whether Eaton was "precluded by any element of the tax structure of the deal [from] spin[ning] off" the vehicle business, because he failed to mention that no tax-free spin-off would be possible. JA 377. Plaintiff maintains that the omission was an attempt by Cutler to avoid admitting Eaton's potential tax liability from any spin-off. But, contrary to plaintiff's suggestion, Cutler correctly answered the question when he noted that "there is nothing in the deal per se that would prevent us from taking portfolio moves." JA 377. Because the initial question focused on whether any taxes would "preclude" future action, Cutler was under no obligation to provide information on the tax consequences of a hypothetical action that was not, technically, precluded. In any event, Cutler reiterated that Eaton "ha[d] no . . . plans" to spin-off the vehicle business. JA 377.

3

*June 22, 2012 Preliminary Proxy Statement*: Plaintiff faults Eaton for stating in an SEC filing that it did "not omit anything likely to affect the import of . . . information [provided]." JA 379. Plaintiff argues that the filing, in fact, omitted information regarding Eaton's ability to conduct a tax-free spin-off. But, again, this argument assumes that Eaton was under an obligation to provide information on the tax consequences of a hypothetical action that it regularly denied it was going to take.

*September 14, 2012 Proxy Statement*: Plaintiff argues that, in a second SEC filing, Eaton misleadingly stated that its merger with Cooper "increased global liquidity and free global cash flow among the various entities of the combined enterprise without negative tax effects." JA 381. In fact, such a statement was accurate. In making it, Eaton referred not to the potential tax effects of divesting from its vehicle business, but instead to the potential tax effects of the merger on "global liquidity and free global cash flow."

*October 31, 2012 Earnings Call*: Plaintiff argues that Cutler, in responding to a question about whether Eaton faced anything from a "regulatory basis . . . that would prevent you from doing additional divestures," misleadingly answered in the negative. JA 382–83. But, much like the May 21 statement, this later statement is not inaccurate. In saying that "there wouldn't be any . . . regulatory restrictions" to prevent a spin-off, Cutler correctly observed that a hypothetical spin-off—even if subject to increased taxes—was not strictly prohibited. JA 383.

*November 13, 2012 Goldman Sachs Conference*: Plaintiff argues that Cutler misleadingly stated that "there is nothing structural in our deal structure or any of our covenants that . . . prevents us from making changes in our portfolio." JA 384. But again, plaintiff overlooks the accuracy of Cutler's statement that no changes were "prevented" by the deal, even if such changes might result in higher taxes. Further, plaintiff ignores the context of Cutler's statement. He immediately noted that "[w]e really like the balance of the businesses as we have and we've never been more bullish on the prospects in our automotive and our truck businesses." JA 384. Such a statement countered any notion that a spin-off of Eaton's vehicle business would be forthcoming, and, therefore, no obligation to detail the tax consequences of such a hypothetical scenario arose.

*February 5, 2013 Earnings Call*: Plaintiff argues that Cutler's statement that "[w]e like the portfolio we're with," was misleading because it suggested that Eaton *chose* not to divest when in fact Eaton was *prevented* from divesting by tax consequences. JA 385. As already noted, however, Eaton was not prevented from divesting, nor obligated to offer information about a purely hypothetical transaction. In context, Cutler's statement was accurate and consistent with prior statements: Eaton "like[d]" its portfolio and had no plans to divest for that reason.

*May 21, 2013 EPG Conference*: In response to a question about whether Eaton was "constrain[ed] [in] things [it] might do strategically, whether that were a larger-scale divestiture or anything else" because of its "tax structure," Cutler said "[o]n the tax issue, no," further noting,

4

"[w]e've got great flexibility in terms of how we are able to move cash around the world." JA 386-87. Plaintiff argues that this was misleading and that Eaton's "tax structure" constrained its ability to undertake a "larger-scale divestiture." But the omission was not misleading, because, in answering a question about what Eaton "might do strategically," Cutler was under no obligation to address a hypothetical divestiture that Eaton repeatedly asserted it was not considering.

*June 12, 2013 Press Release*: Plaintiff argues that Eaton's press release—straight-forwardly entitled "Eaton Not in Discussions to Sell its Automotive Business"—was misleading in omitting any reference to the potential tax effects of such a sale. JA 387. But having flatly denied any interest in spinning off its vehicle business, Eaton had no obligation to explain what might happen if it did undertake such a spin-off. To say that Eaton's press release somehow misled investors into thinking that Eaton still might spin-off its vehicle business is to ignore the press release's plain meaning.

*November 13, 2013 Goldman Sachs Conference*: Plaintiff argues that when Fearon was asked whether Eaton viewed its vehicle business as a "sacred cow" or whether it would consider divesting from it, it was misleading for him to state: "Well, first of all, I'd say nothing is a sacred cow," and "[t]he automotive business . . . is a very high return business and throws off a lot of . . . talent and management . . . and we really don't see a strong case to be made for changing right now." JA 389. Plaintiff argues that, by failing to disclose the tax consequences of divestiture, Fearon misleadingly suggested that Eaton's commitment to the vehicle business was a choice. But Fearon had no obligation to provide tax information about an action Eaton had no intention of taking. And there was no inaccuracy in his statement that Eaton saw no "strong case" to divest. Eaton, at all times, retained the option to divest and was not strictly prevented from doing so, even in the face of an increased tax burden.

In sum, because we identify no material misrepresentation or omission among the ten statements highlighted by plaintiff, we conclude that it failed to state a plausible claim for securities fraud.

## CONCLUSION

We have reviewed all of the arguments raised by plaintiff on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the July 26, 2018 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

5